IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. MCLELLAND AND<br>BARBARA J. MCLELLAND, | )<br>) No. 8-851<br>) |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant, | |
| v. | |
| NORTHWESTERN MUTUAL LIFE INS. CO., | |
| Additional Defendant. | |

## OPINION AND ORDER

### SYNOPSIS

In this civil action, Plaintiff contends that he slipped and fell on ice while on the Defendant's property. At the time, Plaintiff was a tractor-trailer driver, employed by Neff, a trucking company that hauls mail pursuant to transportation services contracts with Defendant. Defendant has moved for summary judgment, on grounds that it should be deemed Plaintiff's employer, and not subject to suit. Also pending are Defendant's Motion to Strike two paragraphs of Plaintiff's affidavit, and Motion to Strike Plaintiff's Appendix, alleging that Plaintiff submitted to the Court gratuitous, immaterial evidence; and Plaintiff's Motion to have certain Paragraphs of Plaintiff's Counter-statement of facts deemed admitted.

The Government's Motions to Strike and Plaintiff's Motion regarding the

Counter-Statement of facts will be denied. The Motions are unnecessary, as the Court will treat all Summary Judgment materials in accordance with applicable Local Rules and Fed. R. Civ. P. 56, and will consider only facts and materials that are appropriate for consideration under those rules. Likewise, the Motion for Summary Judgment will be denied.

## OPINION

### I. Applicable Standards

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem . Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. <u>United States v. Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

Pursuant to Local Rule of Civil Procedure 56.1, alleged material facts claimed to be undisputed will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

I have carefully considered the parties' submissions according to these standards.

**II. Defendant's Motion**

In its Motion for Summary Judgment, Defendant argues that it should be deemed Plaintiff's employer, pursuant to the "borrowed servant" doctrine, and therefore is not subject to suit and is entitled to judgment on Plaintiff's claims against it.  The parties agree that Pennsylvania law applies.

Pennsylvania's Workers' Compensation Act, 77 P.S. § 1 et seq., is the exclusive means for securing compensation for injuries incurred during the course of employment, if the entity from whom compensation is sought is Plaintiff's employer.  Under the "borrowed servant" doctrine, a Plaintiff employed by another may be "transferred to the service of another in such a manner that the employee becomes an employee of the second employer."  Red Line Express Co., Inc. v. Workmen's Comp. Appeal Bd., 588 A.2d 90, 93 (Pa. Commw. 1991).

> [U]nder the "borrowed servant" doctrine, a person who is in the general employ of one employer may be transferred to the service of another employer in such a way that the transferred employee effectively becomes an employee of that second employer.
> While there remains a factual presumption that a borrowed employee remains in the employ of his original employer, this presumption is rebuttable by evidence tending to show that the borrowing employer assumed and exercised "control" over the borrowed employee.
>    \* \* \*
> Under such circumstances, the crucial test remains the issue of control.

Zaragoza v. BASF Constr. Chems., LLC, No. 08-96, 2009 U.S. Dist. LEXIS 8050, at \*\*7-8, 10 (E.D. Pa. Feb. 3, 2009) (citations omitted).

Accordingly, the key issue is the right to control the employee's work and the manner of performing it, regardless of whether that right is exercised.[1] <u>Daily Express, Inc. V. WCAB</u>, 406 A.2d 600, 601 (Pa. Commw. Ct. 1979). The "control" exercised, to establish employee status, must be "meaningful." <u>Williams v. Delta Truck Body Co.</u>, 892 F.2d 327, 330-31 (3d Cir. 1989). Moreover, "[n]othing is more firmly established than that each case of this kind must be decided on its own facts." <u>Lego v. Workmen's Comp. Appeal Bd.</u>, 445 A.2d 1324, 1326 (Pa. Commw. Ct. 1982).

In keeping with the overarching principle of control, courts have enunciated several principles that are particularly instructive in this case:

> Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employe's manner of performing the work , the servant remains in the service of his original employer[.]

<u>Mature v. Angelo</u>, 373 Pa. 593, 596 (Pa. 1953).

Where right of control must be inferred from circumstances, a factfinder should consider factors including right to hire and discharge, right to select the

---

[1] Screening and clearance requirements, while not irrelevant, touch only lightly on the key point of control over the Plaintiff's day-to-day work activities. Similarly, issues surrounding payment of wages and taxes, work assignment, and hiring and firing are "peripheral" to the central issue. <u>Zaragoza</u>, 2009 U.S. Dist. LEXIS 8050 at **11-12. Other proffered facts, such as that Neff had no authority to alter Defendant's unspecified "methods, practices, or procedures," or that drivers follow "directions and instructions" "in all matters pertaining to the transportation of United States mail," are too general to be helpful to the analysis. Without knowing what those matters, methods, or practices are, I cannot assess how they might bear on Plaintiff's work or manner of performance. "There is no magic in the phrase 'right of control.'" <u>Matonti v. Research-Cottrell, Inc.</u>, 202 F. Supp. 527, 536 (E.D. Pa. 1962).

employees to be used on the job, who pays the employee, whether the employee has special skill required for the work, the fact that the hiring is at a daily or hourly rate, or is employment for an indefinite period.  Matonti v. Research-Cottrell, Inc., 202 F. Supp. 527, 535 (E.D. Pa. 1962).

Defendant urges that several factors weigh in favor of finding transferred employment.  Most of these, however, are insufficient to rebut the operative presumption.  For example, it is undisputed that Plaintiff was subject to Defendant's screening and pre-clearance requirements, and reporting of arrests, and the Postal Service alcohol, drug, and weapons prohibition; he also was required to identify himself to USPS personnel prior to entering the transportation area, and follow certain procedures, for example, if he were issued a key.  Such requirements, however, bear a relatively tenuous relationship to Plaintiff's day-to-day work activities –i.e., picking up mail, driving, and dropping off mail-- and manner of performance thereof.  While the right to exclude inheres in any screening or clearance process, the right of excluding a person from performing a particular task or contract is not the precise equivalent of the right to discharge from employment.  Similarly, Plaintiff was required to wear USPS identification, but only when present on USPS property.[2]  Additionally, Defendant contends that several contract provisions, such as those specifying loading and unloading times, the presence of passengers in the trucks, and arrival and departure times, demonstrate that it controlled Plaintiff's duties.

---

[2] An employee identification badge raises a rebuttable presumption that the employer to whom the logo refers is the employer of the person wearing it.  Zaragoza, 2009 U.S. Dist. LEXIS at *9.

Absent evidence to the contrary, however, a contract represents terms mutually agreed upon by, and binding on, both parties; there is no suggestion that the mere presence of these terms indicate "control" by one and not the other.

There are several facts, however, that do suggest Defendant's right to control over Plaintiff's day-to-day activities. For example, the contract stated that drivers would load and unload mail, exchange mail, and "perform...minor administrative services as may be necessary to track and tra[c]e the mail," "when so directed by" Defendant's officer, and were to drop or pickup mail at locations "directed by a postal officer." The drivers "must proceed to perform any extra trips ordered by" the USPS. Additionally, Neff did not maintain any supervisory personnel at USPS locations connected to Plaintiff's duties.

Nonetheless, "Pennsylvania courts have consistently held that the mere fact that a special employer points out the work to be done and the place where it is to be done, does not negate the original master-servant relationship." Matonti, 202 F. Supp. at 537. Similarly, simply designating tasks to be completed, or giving directions, does not necessarily establish the requisite control. Williams, 892 F.2d at 331.[3] Each aspect of control to which Defendant points consists of no more than limited regulation of the work, necessary to see that the contract is performed according to specifications, and is not enough to alter the Plaintiff's employment status. See Matonti, 202 F. Supp. at 537.

---

[3]Williams dealt with an employee with a skilled technical specialty, such that the second employer's right of control was meaningless in practical terms. Even if Plaintiff's Class A driver's license training does not create such a case here, Williams stands for the proposition that the right of control must be meaningful, and mere general direction as to the tasks to be performed may be insufficient.

On the other hand, the record reflects numerous material factors that weigh in favor of retaining the presumption that Neff remained Plaintiff's employer, and run contrary to Defendant's assertion that it controlled Plaintiff "as though he had been directly hired" by Defendant.  For example, Neff owns, insures, and maintains the tractors and trailers that Plaintiff used.  Neff's name, and not that of the USPS, appears on the vehicles.[4]   Neff hires, fires, and pays its employees directly, based on weekly time sheets completed and turned in to Neff; Neff deals with employee taxes and pays worker's compensation coverage; and Neff assigns its drivers, who bid on the routes, to certain routes based on seniority preferences.[5]

Neff required its drivers to attend regular safety meetings, which included instructions and training regarding pre- and post-trip checks of vehicles; safe operation of the vehicles.  Additionally, Neff hired Plaintiff as a Class A driver in 1997, for an indefinite period of time.  Plaintiff attended a third-party driving school to receive training in order to obtain a Class A driver's license.  If a driver was unable to arrive or depart from a USPS facility as dictated by the contract,

---

[4]"[T]he presence of a logo on a commercial vehicle raises a rebuttable presumption that the one to whom the logo refers is the employer of the operator of the vehicle." Lego, 445 A.2d at 1327.

[5]This case is factually distinguishable from the cases that Defendant cites. In O'Donnell v. New England Motor Freight, Inc., 2009 U.S. Dist. LEXIS 20772 (M.D. Pa. March 13, 2009), the second employer supplied the employee's equipment, determined his work hours and assignments, and approved his time cards. Id. at *16. After the first employer assigned the employee to the second, its involvement "essentially end[ed]." Id.  Likewise, in Zaragoza v. BASF Constr. Chems., LLC, No. 08-96, 2009 U.S. Dist. LEXIS 8050 (E.D. Pa. Feb. 3, 2009), the employee reported each day to the second employer, who gave him instructions, training, and supervision, supplied his equipment, and was responsible for scheduling his hours on a daily basis. Id. at **9-10.  In Poyner v. Georgia Pacific Corp., 2004 U.S. Dist. LEXIS 4710 (E.D. Pa. March 18, 2004), the second employer reimbursed the expenses of the employee's wages, taxes, and insurance; the employee's truck carried the second employer's logo; and the parties' agreement provided that the second employer retained exclusive control over the day-to-day direction of employees such as Plaintiff. Id. at **10-11.

for example, the driver would advise Neff dispatch, rather than Defendant.

In addition, although it specified starting and destination points, the contract between Neff and Defendant does not specify any particular driving route, or method of transport (i.e., direct transport or relay). Neff determines the routes and roadways that its drivers take when hauling mail under the USPS contract, based on safety and time-of-transport considerations. Neff determined, for example, that the particular route involved here would be performed via relay. Plaintiff testifies that Neff provided him with suggested routes between destinations, and that he reported to Neff regarding the route.[6] "[T]he right to instruct a driver as to the route to take indicates the presence of the right to control the manner of performing the driver's work." Lego, 66 Pa. Commw. at 599.

Under these facts and principles, a reasonable jury could not conclude that Plaintiff was Defendant's borrowed servant at the time of the accident that is the subject of suit. Instead, this is a case in which Neff agreed "to perform a certain designated task for the other, in effect, agreeing to produce a result. In this latter form of agreement, the one is regarded as an independent contractor, retaining throughout the master-servant relation with his employees." Matonti, 202 F. Supp. at 534.

## CONCLUSION

---

[6] Defendant asserts that Neff did not determine routes, and relies solely on its Operations Support Specialist's testimony that Neff "did not determine the delivery routes that contract drivers would perform." This conclusory statement about "delivery routes" does not create an issue of fact, as it does not contradict the specific evidence that Plaintiff proffers about Neff's control over the methods and roadways used to transport the mail.

For the foregoing reasons, the present record does not permit a conclusion that, as a matter of law, Plaintiff was Defendant's "borrowed servant." Accordingly, summary judgment cannot be granted in Defendant's favor. Additionally, I have considered only portions of the record made appropriate for such consideration under applicable rules, and will deny the other pending Motions. An appropriate Order follows.

**ORDER**

AND NOW, this 3rd day of December, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that the Motions filed at Docket Nos. 48, 50, and 55 are DENIED. Defendant's Motion for Summary Judgment [Docket No. 32] is DENIED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, U.S. District Court