IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM McCLELLAND, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Civil Action No. 8-851 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Defendant. | | |

AMBROSE, District Judge

# FINDINGS OF FACT
# CONCLUSIONS OF LAW
# AND
# ORDER OF COURT

## SYNOPSIS

This is a slip and fall case brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 1402(b), 2401(b) and 2671-2680 by Plaintiffs, William J. McClelland and Barbara J. McClelland against Defendant, United States of America ("USA"). Plaintiff wife also asserts a claim for loss of consortium. Defendant, USA, filed a Third-Party Complaint against Third-Party Defendant, Northwestern Mutual Life Insurance Company ("Northwestern") for contribution and indemnity. A non-jury trial was commenced on April 5, 2010, and concluded on April 7, 2010. At the conclusion of the trial, I directed the parties to submit proposed Findings of Fact and Conclusions of Law on the issues of liability and damages. The parties have done so. (Docket Nos. 78, 81, 83). Having now fully considered the testimony of all witnesses and evidence admitted at trial, as well as the submissions of the parties, I make the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

I.  **FINDINGS OF FACT**

   A.  <u>**Liability**</u>

1. On February 7, 2006, Plaintiff, William J. McClelland, was 52 years old.

2. Plaintiff, Barbara J. McClelland, is the wife of Plaintiff, William J. McClelland.

3. Plaintiffs knew each other since 1972 and were married on September 30, 1998.

4. Prior to the incident on February 7, 2006, Plaintiff-husband enjoyed doing housework, yard work, detailing cars, and attending car races.

5. On February 7, 2006, the United States Postal Service ("USPS") operated a Logistics and Distribution Center ("the L&DC") at 51 Pennwood Place in Warrendale, Pennsylvania 15086.

6. The L&DC is a large mail distribution center that operates 24 hours a day, 7 days a week.

7. The L&DC has 61 dock doors through which mail is loaded and unloaded.

8. There is a concrete pad/apron that extends 53 feet away from the building out toward an asphalt parking lot.

9. On a daily basis, the L&DC accommodates 200-300 tractor trailers that haul mail for the USPS.

10. On February 7, 2006, the building in which the L&DC is located was owned by The Northwestern Mutual Life Insurance Company ("Northwestern").

11. On the same date, the USPS was leasing the space in which the L&DC is located from Northwestern pursuant to a written lease.

12. The written lease provides that in addition to the base rent, the USPS shall pay as additional rent the cost of removing snow and ice from driveways and parking lots.

13. On February 7, 2006, Oxford Development Company ("Oxford") was the agent of Northwestern and was engaged as property manager for the building in which the L&DC is located pursuant to a written management and operating agreement.

14. On that same date, SMG Enterprises, Inc. ("SMG") was the snow removal contractor for the building in which the L&DC is located pursuant to a written service contract for snow removal with Oxford.

15. The service contract for snow removal states that SMG will plow snow from the parking lots when the snow reaches an accumulation of 2" or upon Northwestern's request and that SMG will salt the parking lot at their discretion or upon Northwestern's request.

16. However, if the accumulation was under two inches of snow and the USPS called, SMG would plow and/or salt the L&DC without having to get approval from Northwestern or Oxford.

17. The various USPS employees could and would call SMG for snow and ice removal.

18. The USPS took an active role with SMG to make sure the lot was plowed properly.

19. Additionally, sometimes USPS employees would engage in snow removal with a shovel and ice removal by spreading salt on the ice.

20. The shovels and salt were located just inside the doors at the L&DC.

21. On February 7, 2006, Plaintiff-husband was employed by Robert Neff, Inc. ("Neff") as a tractor trailer driver.

22. Neff hauls bulk U.S. mail pursuant to various contracts with the USPS.

23. On February 7, 2006, Neff assigned Mark Volkwein and Plaintiff-husband to haul a trailer full of U.S. mail from the L&DC to Harrisburg, Pennsylvania.

24. Mark Volkwein was assigned the 3:30 a.m. run and Plaintiff-husband was assigned the 7:30 a.m. run.

25. The trailers that Plaintiff-husband and Mr. Volkwein were to haul were parked at dock 31 when they arrived at the L&DC on the morning of February 7, 2006.

26. Between docks 31 and 32 were steps leading to a man-door where drivers would enter the L&DC building.

27. Plaintiff-husband had been hauling mail out of dock 31 on an almost daily basis for approximately two and a half years.

28. During inclement weather in 2006, the area between docks 31 and 32 tends to collect water. This was commonly known by the USPS as various persons had complained about it and had slipped and/or fallen there.

29. The USPS never had any discussions with Northwestern or Oxford specifically about the pooling or collection of water in the area between docks 31 and 32 prior to February 7, 2006, but just in general about water pooling on the apron.

30. Additionally, Draga Luksic at Oxford did regular site inspections of the L&DC prior to February 7, 2006.

31. Ms. Luksic noticed and was aware of water pooling on the apron in general.

32. In winter weather conditions, the area between docks 31 and 32 would freeze and become slippery.

3

33. Hence, the area between docks 31 and 32 became known as the "ice rink" in the winter and the "lake" in the summer.

34. On February 7, 2006, the weather conditions were cold and snowy.

35. When Mr. Volkwein exited his truck that morning at the L&DC, there was approximately 1 inch of snow on the ground and he slipped on the ice beneath the snow between docks 31 and 32.

36. Mr. Volkwein entered the L&DC and informed a USPS supervisor that the dock area was "getting mighty slippery."

37. By 6:30 a.m. on February 7, 2006, a yard jockey at the L&DC employed by Veltri Trucking, Patrick McGowan, notified the USPS over the radio dispatch that the parking lot was slippery and needed to be salted.

38. On February 7, 2006, at approximately 7:30 a.m., Plaintiff-husband arrived at the L&DC to pick up the trailer he was to haul to Harrisburg, Pennsylvania.

39. He saw snow on the ground and exited his truck at dock 31 with the intention of entering the L&DC by means of a man door located between docks 31 and 32.

40. Plaintiff-husband took three or four steps and then slipped and fell on the ice between docks 31 and 32, hitting his head as he landed on the ice.

41. 911 was called and USPS employees began spreading salt on the ice.

42. The ice was about 2-2 ½ inches thick.

43. Plaintiff-husband was unconscious at first and was bleeding from his ears and eyes.

44. The paramedics arrived in approximately 10 minutes and Plaintiff was conscious at this point.

45. Prior to Plaintiff-husband's slip and fall on February 7, 2006, no one from the USPS called SMG for snow or ice removal.

46. No USPS employee had spread salt on the ice between docks 31 an 32 prior to Plaintiff-husband's fall on February 7, 2006.

47. SMG had not plowed or salted the L&DC lot on February 7, 2006, prior to Plaintiff-husband's fall.

48. On February 7, 2006, the USPS did not call SMG until after Plaintiff-husband's fall.

49. Plaintiff-husband was taken to the emergency room. He testified that the room was spinning and that he had neck pain (but his neck pain has resolved).

50. Plaintiff-wife met him at the hospital.

51. At the hospital, they stapled shut the cut on his head and then sent him home.

52. As a result of the fall, Plaintiff-husband sustained multiple injuries.

53. He sustained a rotator cuff injury that required surgery.

54. At this time, Plaintiff-husband has fully recovered from his shoulder injury.

55. Plaintiff-husband also sustained a clinically significant closed head injury called post concussive syndrom ("PCS").

56. In Plaintiff-husband's case, his PCS includes headaches, less energy and strength, muscle aches, left sided ear ringing, hearing loss, sensations on his face, balance disorder, cognitive problems, irritability, apathy and depressive symptoms.

57. Plaintiff-husband has a chronic pain disorder associated with his "ice pick" headaches. They were frequent and severe in the beginning but now are less frequent.

58. Plaintiff-husband has a chronic vestibular disorder (dizziness) due to his middle ear injury.

59. Plaintiff-husband also has nocturnal restless leg syndrome.

60. These injuries are fixed and may get worse.

61. Consequently, because of Plaintiff-husband's sustained injuries, he cannot engage in physical labor and cannot return to the trucking industry.

62. Since the fall, Plaintiff-husband cannot drive for any significant period of time. He is no longer affectionate with Plaintiff-wife, and he lacks physical intimacy with her. They argue often now. They do not go on family trips or outings. He cannot be in charge of the family finances.

63. Additionally, the medication Plaintiff-husband takes for his PCS causes sexual dysfunction.

64. Plaintiff-wife has gone and continues to go with Plaintiff-husband on all of his medical appointments because of his poor memory and to drive.

65. Plaintiff-wife cries and is frustrated over Plaintiff-husband's condition.

66. Plaintiffs commenced a negligence action in the Court of Common Pleas of Allegheny County, Pennsylvania at No. GD 08-675 against Northwestern, Oxford, and SMG.

67. Plaintiffs also initiated this action. The U.S.A. filed a third-party complaint against Northwestern seeking contribution and/or indemnity pursuant to the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S.A. §8321, *et seq.*

68. Plaintiffs entered into a release and settlement agreement with Northwestern as to both actions and with Oxford, and SMG in the case in Allegheny County, Pennsylvania.

69. Pursuant to the terms of the release and settlement agreement, Northwestern, Oxford and SMG are released from liability in exchange for the payment of $400,000.00 and the claim against the USA is reduced by the proportion that Northwestern's ultimate liability bears on the total damages.

### B. Damages

70. As a result of his slip and fall, Plaintiff-husband has endured pain and suffering.

71. During his adult life, Plaintiff-husband has worked almost continuously. Since the slip and fall on February 7, 2006, Plaintiff-husband has not worked. Thus, Plaintiff-husband has suffered and will continue to suffer economic loss as a result of the slip and fall.

72. Plaintiff-husband was 52.1 years of age at the time of the incident on February 7, 2006.

73. At that time, Plaintiff-husband had future life expectancy of 27.4 years.

74. Based on this figure, Plaintiff-husband has lost household services for 27.4 years at minimum wage for a total of $71,570.00.

75. At the time of the incident, based on education, work history, income history, family history and the possibility of further employment, Plaintiff-husband had an expected work life of 11.1 years (until he reached the age of 63.2).

76. Taking into account inflation Plaintiff-husband's lost income for that time is $653,166.00.

77. Plaintiff-husband would have also lost employer contributions to the Money Purchase Plain in the amount of $47,460.00 and the Mutual Fund Account in the amount of $28,416.00.

78. Thus, Plaintiff-husband's economic loss before mitigation would have been $800,612.00.

79. If Plaintiff found a minimum wage job as of January 1, 2009 and worked for the additional 8.2 years he would have earned a total of $121,950.

80. Thus, he would have a total net economic loss of $678,662.00.

## II. CONCLUSIONS OF LAW

81. The FTCA waives sovereign immunity for injuries caused by federal employees while acting in the scope of their employment. 28 U.S.C. §1346(b).

82. In this case, the acts of the employees of the USPS were within the scope of their employment thereby waiving sovereign immunity.

83. The FTCA provides that a court must apply the substantive law of the state where the tort occurred. *Id.*

84. In this case, the accident occurred in Pennsylvania and, thus, the substantive law of Pennsylvania governs this action.

85. To establish a negligence claim, Plaintiff-husband must establish four elements: 1) a duty; 2) a breach of the duty; 3) a causal connection between the conduct and the resulting injury; and 4) damages. *Swift v. Northeastern Hosp. of Phil.,* 690 A.2d 719, 722 (Pa. Super. 1997).

86. There is no dispute that on February 7, 2006, Plaintiff-husband was a business invitee.

87. Under Pennsylvania law, business invitees are owed the highest duty of care to any entrant upon land. *Campisi v. Acme Markets, Inc.,* 915 A.2d 117, 119 (Pa. Super. 2006).

88. Landowners are "under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Id., quoting, Emge v. Hagosky,* 712 A.2d 315, 317 (Pa.Super.1998).

89. In determining the scope of duty property owners owe to business invitees, Pennsylvania courts rely on the Restatement (Second) of Torts § 343, which provides:

    > A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:
    >
    > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
    >
    > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
    >
    > (c) fails to exercise reasonable care to protect them against the danger.

    Restatement (Second) of Torts § 343.

90. Under the "hills and ridges doctrine," an owner or occupier of land is not liable for generally slippery conditions resulting from ice and snow where the owner or occupier has not permitted the ice and now to unreasonably accumulate in ridges or elevations. *Biernacki v. Presque Isle Condom. Unit Owners Ass'n, Inc.,* 828 A.2d. 1114, 1116 (Pa. Super. 2003).

91. Thus, to establish liability under the hills and ridges doctrine, a plaintiff must prove that: (1) snow and ice has accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to those traveling

thereon; (2) the property owner had actual or constructive notice of the existence of this condition; and (3) the dangerous accumulation of ice and snow caused plaintiffs injuries. *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa.1962).

92. Plaintiffs are not required to prove the presence of "hills and ridges," however, in cases involving a localized, isolated patch of ice at a time where the conditions in the community are not generally slippery. *Tonik v. Apex Garages, Inc.*, 275 A.2d 296, 298 (Pa.1971).

93. The instant case involves an isolated patch of ice that was permitted to accumulate in the area between docks 31 and 32.

94. Thus, the doctrine of hills and ridges does not apply in this case.

95. I am persuaded that the USPS had actual knowledge of the ice condition existing between docks 31 and 32 in general and of the snow and ice on the morning of February 7, 2006 in particular, and should have realized that it posed an unreasonable risk of harm to Plaintiff-husband.

96. The USPS should have expected that its business invitees such as Plaintiff-husband would not realize the danger.

97. I find that the USPS breached its duty to exercise reasonable care to protect Plaintiff-husband from the danger and that this breach was one of the causes of Plaintiff-husband's injuries.

98. I am also persuaded that Northwestern knew of the water pooling and freezing issues existing on the apron and should have realized that it posed an unreasonable risk of harm to Plaintiff-husband but did nothing about it other than to contract with SMG to plow when the snow reached an accumulation of 2" or upon Northwestern's request and to salt the parking lot at SMG's discretion or upon Northwestern's request.

99. Northwestern should have expected that its business invitees such as Plaintiff-husband would not realize the danger.

100. Thus, I find that Northwestern failed to exercise reasonable care to protect Plaintiff-husband from the danger and that this failure was one of the causes of Plaintiff-husband's injuries.

101. Pursuant to the Pennsylvania Comparative Negligence Act, the fact that "the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." 42 Pa.C.S. §7102(a).

102. "Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of

the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution." 42 Pa.C.S. §7102(b).

103. I find that Plaintiff-husband exercised reasonable care in exiting his truck and was not contributorily negligent.

104. Under Pennsylvania law, an injured plaintiff is entitled to recover past and future non-economic damages including: 1) pain and suffering; 2) embarrassment; 3) loss of ability to enjoy the pleasures of life; and disfigurement. Pa. R.C.P. 223.3.

105. The evidence established that Plaintiff-husband has suffered both physical and mental pain and suffering, embarrassment, and has lost some of the abilities to enjoy the pleasures of life in the amount of $300,000.00.

106. Thus, Plaintiff-husband's total damages are $978,662.00.

107. Under Pennsylvania law, a plaintiff can recover for loss of consortium that includes loss of conjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation. *Tucker v. Philadelphia Daily News,* 848 A.2d 113, 127 (Pa. 2004), *citing,* Black's Law Dictionary 309 (6th ed.1990).

108. Based on the evidence, I find the total damages for Plaintiff-wife's loss of consortium claim to be $100,000.00.

109. The total award of damages for Plaintiffs is $1,078,662.00.

110. I find that the USPS and Northwestern are joint tortfeasors each being 50% negligent.

111. Under the Pennsylvania Uniform Contribution Among Tortfeasors Act, "[a] release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid. 42 U.S.C. §8326.

112. The Pennsylvania comparative negligence statute provides that "[w]here recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. " 42 Pa.C.S.A. §7102(b).

113. In this case, a pro rata release has been executed and calls for the reduction of the USA's liability by the proportion of Northwestern's allocated share of liability.

114. The U.S.A. is required to pay only its pro rata share of 50%.

9

115. Thus, no right to contribution exists.

116. Accordingly, judgment will be entered in favor of Plaintiffs and against U.S.A. in the amount of $539,331.00 and in favor of Northwestern, Third-Party Defendant, and against U.S.A., Third-Party Plaintiff.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM McCLELLAND, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant and Third-Party Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NORTHWESTERN MUTUAL LIFE ) <br> INSURANCE COMPANY, ) <br> ) <br> Third-Party Defendant. | Civil Action No. 8-851 |

AMBROSE, District Judge

# ORDER OF COURT

AND now, this 26th day of July, 2010, it is ordered as follows:

1. Verdict is hereby entered in favor of Plaintiffs and against Defendant, U.S.A., in the amount of $539,331.00.

2. Verdict is hereby entered in favor of Northwestern, Third-Party Defendant, and against U.S.A., Third-Party Plaintiff.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States District Judge